UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| JUDY JOHNSON<br><br>     Plaintiff,<br>v.<br><br>THE BERKLEY GROUP, INC., a Florida corporation, and CARIBBEAN CRUISE LINE, INC., a Florida corporation,<br><br>     Defendants. | Civil Action No. 1:12-cv-01184<br><br><br><br>Judge Lee Yeakel |

**DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO MOTION TO DISMISS AMENDED COMPLAINT AND MOTION TO STRIKE CERTAIN DAMAGES**

Defendants The Berkley Group, Inc. ("Berkley") and Caribbean Cruise Line, Inc. ("CCL") (collectively, "Defendants") submit this reply to Plaintiff's Response[1] (the "Response") to Defendants' Motion to Dismiss Plaintiff's Amended Complaint[2] (the "Amended Complaint") and Motion to Strike Certain Damages[3] (the "Motion").

**I.    INTRODUCTION AND BACKGROUND**

In a desperate attempt to circumvent the requirements of Federal Rule of Civil Procedure 15 and well-established case law, Plaintiff's Response attempts to introduce new allegations and legal theories that were not pleaded in the Amended Complaint in the futile attempt to survive Defendants' Motion. Curiously, the Response actually introduces new facts that not only contradict the allegations in the Amended Complaint, but also, the affidavit submitted by

---

    1.    DE 21 (the "Amended Complaint").
    2.    DE 22 (the "Motion").
    3.    DE 24 (the "Response").

12960038:3

Plaintiff in support of the Response.[4] As such, Defendants are left guessing as to exactly which version of Plaintiff's story they are obliged to respond. Plaintiff's attempt to play by her own set of rules and amend her Amended Complaint via the Response should not be tolerated.

Plaintiff's tactics cannot change the dispositive law here. The Response and supporting affidavits wholly fail to refute Defendants' arguments and the dispositive case law upon which Defendants rely, and instead, attempt to confuse this Court with new allegations and inadmissible hearsay.[5] The Amended Complaint and the Response still include nothing more than conclusory, boiler-plate allegations and do not cure any of the deficiencies raised by the Motion. Therefore, because (1) Plaintiff does not, because she cannot, meet her burden of establishing a prima facie case of specific jurisdiction over Defendants; (2) the Amended Complaint impermissibly lumps both Defendants together, (3) Plaintiff has not sufficiently alleged a claim for "on behalf of" liability under the TCPA against either Defendant, and (4) Plaintiff does not adequately plead that Defendants made calls using an artificial or pre-recorded voice, the Amended Complaint must be dismissed. Moreover, because the TCPA does not permit damages for "emotional distress," which are different than "actual damages," Plaintiff's demand for such damages should be stricken.

## II. ARGUMENT

### A. Plaintiff does not, because she cannot, meet her burden of establishing a prima facie case of specific jurisdiction over Defendants.

---

4. *See* DE 24-1, Affidavit of Judy Johnson ("Johnson Aff.").
5. *See* Motion to Strike Declaration of Sergei Lemberg ("Lemberg Dec.") DE 29 (the "Motion to Strike"). As argued in more detail in the Motion to Strike, the Lemberg Dec. attempts to introduce irrelevant and inadmissible exhibits for this Court's consideration of the Motion. The exhibits are not properly authenticated under Fed.R.Evid. 801, are highly prejudicial under Fed.R.Evid. 403, and have no bearing on the issues before the Court in the Motion. As such, the Lemberg Dec. and the exhibits it seeks to introduce should be stricken from the record.

Ostensibly conceding that there is no general jurisdiction in Texas over either Defendant, Plaintiff focuses her Response on whether specific jurisdiction exists over Berkley and CCL. The Fifth Circuit employs a three (3) step analysis for specific jurisdiction: "(1) whether the defendant has minimum contacts with the forum state, *i.e.*, whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable."[6] It is indisputably Plaintiff's burden to establish a *prima facie* case of personal jurisdiction over each Defendant here.[7] However, Plaintiff seeks to shift the burden, replete with citations to the Amended Complaint, as well as seeking to introduce inadmissible hearsay and innuendo in place of real evidence, and puts the onus on CCL and Berkley to prove that they are *not* subject to personal jurisdiction.

Plaintiff's strategy is contrary to well-established law. The burden of proof does not shift to the party challenging personal jurisdiction.[8] Moreover, Plaintiff cannot simply cite to her allegations in the Amended Complaint, which are not evidence, to support personal jurisdiction here. While Plaintiff asserts her jurisdictional allegations in the Amended Complaint are "uncontroverted," in reality, each and every jurisdictional allegation is *expressly* contraverted by the affidavits of Robert Mitchell[9] and Marc Landau.[10] As detailed specifically in the Mitchell and Landau affidavits, Berkley and CCL *did not* call Plaintiff. These alleged phone calls are Plaintiff's only purported basis for jurisdiction and both Berkley and CCL expressly refute this

---

6. *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009).
7. *See Felch v. Transportes Lar-Mex SA DE CV*, 92 F.3d 320, 326 (5th Cir. 1996).
8. *See Morris v. B.C. Olympiakos, SFP*, 721 F. Supp. 2d 546, 557 (S.D. Tex. 2010).
9. *See* DE18-1 ("Mitchell Aff.").
10. *See* DE18-2 ("Landau Aff.").

3

basis in the Motion.

Plaintiff's allegations are further contraverted by the duplicitous stories Plaintiff tells between the Amended Complaint, the Johnson Affidavit, and the Response. Specifically, the Amended Complaint tells the story that "Defendants" repeatedly called Plaintiff's home telephone number.[11] Putting aside for a moment that Plaintiff impermissibly lumps CCL and Berkley together without distinguishing who did what to subject each Defendant to personal jurisdiction in Texas, what is particularly troubling is the metamorphosis of Plaintiff's story in each filing. For example, in the Johnson Affidavit, Plaintiff states that *she called* the number given to her in the phone calls.[12] Thereafter, Plaintiff states that she was "transferred" to a representative who claimed to be from CCL.[13] As such, by Plaintiff's own account, to the extent that Plaintiff had any contact with CCL, Plaintiff arguably *initiated* such contact. Curiously, the Response omits Plaintiff's sworn statement regarding the transferred call and states that when Plaintiff called, she spoke directly to CCL.[14] Despite the differences in the jurisdictional arguments in the Response and Affidavit, they share one common thread: ***both are conspicuously silent as to Berkley***.

The burden is on Plaintiff here to produce *some evidence* beyond the Amended Complaint as to *each* Defendant – she cannot simply rely on conclusory allegations as to the

---

11. *See* DE 21 at ¶¶13-14.
12. *See* Johnson Aff. at ¶3.
13. *See* Johnson Aff. at ¶3.
14. *See* DE 24 at 5. Importantly, both the Johnson Affidavit and the Response state that the number called by Plaintiff was "one of the phone numbers from which she received the Robocalls." Thus, by both accounts, Plaintiff was receiving other "Robocalls," and chose to return the call of *one* of the numbers. Notably, Texas courts and the Fifth Circuit have consistently and overwhelmingly held that the use of interstate mail and telephone facilities are insufficient to satisfy due process for purposes of long-arm jurisdiction under Texas law. *See*, *e.g.*, *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985); *Morris v. B.C. Olympiakos, SFP*, 721 F. Supp. 2d 546, 569 (S.D. Tex. 2010).

Court's personal jurisdiction over either Defendant.[15] However, not only can Plaintiff not counter the Mitchell and Landau Affidavits, but Plaintiff's own affidavit and Response do nothing to show a single shred of evidence that either Defendant should be subject to jurisdiction here. Instead, Plaintiff grasps at a legal theory only mentioned as an afterthought in the Amended Complaint, namely, that Defendants are subject to personal jurisdiction in Texas because if neither of them made the call to Plaintiff, then a third party must have done it on their behalf.[16] However, Plaintiff did not plead any agency, vicarious liability, or "on behalf of" liability allegations in the Amended Complaint.[17] Rather, Plaintiff pled a legal conclusion, devoid of any factual support that "Defendants made, or caused a third party to make on their behalf numerous Robocalls to Plaintiff's home telephone"[18]

As discussed further in Subsection C, *infra*, Plaintiff cannot hang her hat on this unadorned allegation – neither to make a *prima facie* showing of jurisdiction against each Defendant, nor to state a claim under the TCPA. Plaintiff has made no showing with any ***evidence***, other than her own self-serving affidavit listing only CCL, tying either Defendant to Texas. As such, there is no specific jurisdiction and the minimum contacts requirement cannot be met here; as a result, exercise of jurisdiction over CCL and/or Berkley does not comport with

---

15. *See Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 612 (5th Cir. 2008).
16. DE 24 at 5-6.
17. Plaintiff cannot introduce these new allegations now. *See*, *e.g.*, *Tanner v. City of Lubbock, Tex.*, CIV.A.5:04CV147-C, 2005 WL 1249447, *10, fn. 3 (N.D. Tex. 2005) ("Plaintiff attempts to present new allegations by way of her affidavit contained in her Appendix in Support of Response… Plaintiff will not be allowed to make allegations by way of her Response and supporting materials that were not alleged in her pleading.") (emphasis added); *Mackey v. Jones*, CIV.A. 503CV006-C, 2004 WL 994688, *7, fn. 2 (N.D. Tex. 2004) ("To the extent that Plaintiff has attempted to add new allegations and defendants in his response to the motion for summary judgment, Plaintiff is admonished that he may not amend his pleadings").
18. DE 21 at ¶14.

5

due process.[19] Therefore, Defendants' Motion to Dismiss should be granted for lack of personal jurisdiction.

Moreover, as discussed further in the Motion to Strike,[20] Plaintiff cannot introduce inadmissible hearsay as another ruse to amend the Amended Complaint with her Response and prejudice this Court into granting jurisdictional discovery here. Clearly, if there was any evidence whatsoever to support Plaintiff's claims, she would have used it in support of the Amended Complaint or the Response. Plaintiff should not be permitted to go on a fishing expedition through Berkley and CCL's files and continue to harass them with her baseless claims.[21]

### B. The Amended Complaint impermissibly lumps both Defendants together.

The Response next attempts to survive the Motion using the same tactics employed in the Amended Complaint: impermissibly lumping Defendants together. The thrust of Plaintiff's argument is that she "alleges that each Defendant engaged in the same illegal conduct by making, or causing to make, unsolicited telemarketing Robocalls to Plaintiff's residential line without her consent" and that this is all Plaintiff needs to allege to survive a 12(b)(6) motion.[22] The issue with Plaintiff's theory of the case is: it is nonsensical. Nowhere does Plaintiff explain how it is even possible that both Defendants had exactly the same role and engaged in exactly the same conduct toward Plaintiff. Moreover, Plaintiff's theory of the case for group pleading

---

19. Due process requires that the defendant have sufficient minimum contacts with the forum such that the suit "does not offend "traditional notions of fair play and substantial justice." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980).
20. DE 29.
21. Plaintiff claims that granting Defendants' Motion would "strip the TCPA of its teeth." DE 24 at 3. However, denying the motion strips the Texas Long Arm Statute and the Due Process Clause of the United States Constitution of all meaning. Defendants' lack of minimum contacts with this forum has nothing to do with the substance of the TCPA. Plaintiff could easily file suit against Defendants in Florida, where personal jurisdiction exists over each of them.
22. DE 24 at 17-18.

purposes (Berkley and CCL did exactly the same thing) contradicts her theory of the case for her jurisdictional allegations and "on behalf of" liability under the TCPA. Plaintiff is not permitted to simply throw any allegations against the wall, including contradictory ones, to see what will stick.[23] As such, the Amended Complaint should be dismissed for impermissibly lumping Defendants together and failing to plead plausible facts regarding each Defendant's role here.

### C. Plaintiff has not sufficiently alleged a claim for "on behalf of" liability under the TCPA against either Defendant.

Continuing her strategy to attempt to amend the Amended Complaint via the Response, Plaintiff concludes that she has "adequately [pled] that Defendants violated the TCPA by making, or causing to be made, telemarketing calls[.]"[24] However, admittedly, the only "specific factual allegations" Plaintiff states regarding this legal theory is the single, unadorned allegation that "Defendants made, or caused a third party to make on their behalf…"[25] Thereafter, Plaintiff tries to bolster this legal conclusion by asserting that the products being marketed are similar to that of Defendants'.[26] The smoke and mirrors Plaintiff attempts to erect here, however, are not enough to allege a TCPA violation by either Defendant. Subsection 227(b)(1) only makes it unlawful to "make" or "initiate" a call and says nothing about calls being made on another person or entity's "behalf."[27] Neither that prohibition nor the accompanying private right of action mentions liability against any other party. Subsection 227(c) contains language which

---

23. *Twombly,* 127 S.Ct. at 1974; *Ashcroft*, 129 S. Ct. at 1949; *see also Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010); *see also Hanley v. Green Tree Servicing, LLC*, Case No. 12 C 4158, 2013 WL 1189697, *2 (N.D. Ill. Mar. 21, 2013).
24. DE 24 at 14.
25. DE 21 at ¶14.
26. DE 24 at 15.
27. 47 U.S.C. § 227(b)(1)(A).Compare this Subsection to Subsection 227(c)(5) (allowing an "on behalf of" liability claim for solicitations to those on the national Do Not Call list). This is the only section within the entire text of the TCPA where Congress chose to use the words "on behalf of". Subsection 227(c) is not at issue in this case.

allows the imposition of "on behalf of" liability for solicitations to individuals on the "Do Not Call" list. There is even a distinction with respect to the available remedies under these separate statutory subsections which reveals Congress' intent to not allow "on behalf of" liability for violations of Subsection 227(b).[28]

The omission of any such third party liability language in Section 227(b)(1)(A) is significant. "[I]n enacting the TCPA, Congress wrote precisely."[29] The statutory structure shows that Congress knew how to impose liability on entities other than the "make[r]" of the calls when it wished to do so. Thus, the plain language of the TCPA assigns civil liability pursuant to Section 227(b)(1)(A) solely to the party who "makes" the call, not others.[30] Consistent with the Congressional intent, courts addressing the meaning of the terminology used by Congress in the TCPA have found that direct liability can only exist against the actual ***"maker"*** of the call(s) at issue.[31] In *Thomas v. Taco Bell Corp.*, Ms. Thomas was seeking to hold the defendant liable under a theory of "on behalf of" liability, which she claimed existed under the TCPA. The court rejected that theory and specifically held that no "on behalf of" liability exists under Section

---

28. *Compare* 47 U.S.C. § 227(b)(3)(B) ("$500 in damages for each violation") with 47 U.S.C. § 227(c)(5)(B) (stating that an action may brought against the entity making a call *"on behalf of"* another entity for "up to $500 in damages for each such violation".); *see also* 47 U.S.C. § 64.1200(a) (limiting liability to persons who "initiate" calls) and (d) (finding *"on behalf of"* liability for a failure to honor do not call requests).

29. *International Science & Tech. Inst., Inc. v. Inacom Commc'ns, Inc.*, 106 F.3d 1146, 1152 (4th Cir. 1997).

30. *See Zuni Public School Dist. No. 89*, 550 U.S. at 93-94 (when interpreting a statute, a court should first look to the plain language and attributed meaning and, if the statute on its face is clear and unambiguous, the inquiry should end). Similarly, statutory provisions are to be construed as a whole, and where Congress includes particular language in one section of a statute but omits it in another provision of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion. *See Russello v. United States, 464 U.S. 16 (1983); Gustafson v. Allyd Corp.*, 513 U.S. 561, 570, 131 L.Ed. 2d 1, 115 S.Ct. 1061 (1995); *INS v. Cardoza-Fonseca*, 480 U.S. 421 (1987).

31. *See* fn 30, *supra.*

Case No. 1:12-cv-01184
*Defendants' Reply to Response
to Motion to Dismiss and Strike*

227(b)(1)(A)(iii) of the TCPA.[32]

Here, Plaintiff only alleges that "Defendants made, or caused a third party to make on their behalf…" the subject calls.[33] This "unadorned," "naked assertion" is not entitled to an assumption of truth[34] and is simply not enough to establish "on behalf of" liability under the TCPA.[35] To the extent Plaintiff believes in good faith that she can establish a "vicarious liability" theory, separate and apart from the TCPA, she must plead sufficient allegations of direction and control in order to maintain such a theory.[36] As it currently stands, however, the Amended Complaint does not articulate any theory of vicarious or third-party liability and any attempt to do so would be futile. As such, Plaintiff's Amended Complaint fails to state a cause of action

---

32. *Taco Bell Corp.*, 2012 WL 3047351 at * 4; *see also Mey v. Pinnacle Sec., LLC*, 5:11CV47, 2012 WL 4009718 (N.D.W. Va. Sept. 12, 2012); *Applestein v. Fairfield Resorts*, No. 0004, Sept. Term, 2007, 2009 WL 5604429 (Md. Ct. Spec. App. July 8, 2009). The fact that the court interpreted "initiate" to limit liability solely to the entity making the calls, and not to Fairfield, the entity on whose behalf the calls were being made, certainly yields the conclusion that the use by Congress of the even more restricted term "make" in Section 227(b)(1)(A)(iii) precludes any imposition of "on behalf of" liability. Essentially, the plaintiff in *Applestein* was attempting to impose a nondelegable duty on the defendant to ensure that the telemarketing calls of its independent contractors complied with the TCPA, which the court, rightfully so, refused to do. *Id*. at *8.

33. DE 21 at ¶14.

34. *Iqbal*, 129 S.Ct. at 1949.

35. *See Mais v. Gulf Coast Collection Bureau, Inc.*, Case No. No. 11–61936–Civ–Scola, 2013 WL 1899616, --- F.Supp.2d ---- (S.D. Fla. May 8, 2013); *Hurst v. Mauger*, Case No. 11-C-8400, 2013 WL 1686842 (N.D. Ill. April 16, 2013); *Bridgeview Health Care Center Ltd. v. Clark*, Case No. 09-C-5601, 2013 WL 1154206 (N.D. Ill. March 19, 2013).

36. Plaintiff attempts to cite *Desai v. ADT Sec. Services, Inc*., 2011 WL 2837435, at *1 (N.D. Ill. July 18, 2011) and *Birchmeier v. Caribbean Cruise Line*, 2012 WL 7062748 (N.D. Ill. Dec. 31, 2012). These cases are easily distinguishable. First, in *Desai*, the complaint was only against one defendant – ADT – who the plaintiff alleged either left, or directed another party to leave, an advertising message concerning ADT on plaintiff's cell phone voice mail. Plaintiffs have not alleged such detail or individualized conduct against either CCL or Berkley here. Similarly, in *Birchmeier*, the plaintiff alleged specific allegations regarding the relationship between the parties and how one defendant made calls "on behalf of" the other, *e.g*., that Caribbean had "acted under the guise of conducting political surveys but that this was a sham intended to get their foot in the door to sell ocean cruises to the calls' recipients." No such specific allegations have been made against either Berkley or CCL here.

9

against either CCL or Berkley for a violation of the TCPA and thus, must be dismissed.

### D. Plaintiff does not adequately plead that Defendants made calls using an artificial or pre-recorded voice.

Unable to address Defendants' arguments regarding her inadequate TCPA violations, Plaintiff next resorts to misquoting the Motion in order to create a straw man to counter. The Motion clearly states that "the Amended Complaint does not allege that either Defendant operated or had any control over the supposed automated dialing equipment. Under Subsection 227(b), sufficient allegations of "direction" and "control" must be provided."[37]  Here, however, Plaintiff actually makes the untenable arguments that (1) the definitions of subsection (a) of the TCPA do not apply to her claims; and (2) that the sub-heading "Restrictions on the use of automated telephone equipment" which govern her §227(b)(1)(B) claim should be ignored because her claim only concerns using "an artificial or pre-recorded voice."[38]

Once again, Plaintiff's allegations here are not only inadequate under the TCPA, but ask this Court to check its common sense at the door and read into Plaintiff's Amended Complaint allegations that are simply not there. For example, Plaintiff cites *Strickler v. Bijora, Inc.*,[39] for the proposition that "a complaint sufficiently alleges the use of [automatic dialing technology] where it can be inferred that the subject calls were made 'en masse.'"[40] However, in *Strickler*, the Court found that the language of the subject text at issue permitted the inference that an automatic telephone dialing system was used.[41] By contrast, the Amended Complaint only alleges that

---

37. DE 22 at 13.
38. DE 24 at 16.
39. 11 CV 3468, 2012 WL 5386089 (N.D. Ill. Oct. 30, 2012)
40. DE 24 16-17.
41. "It can be inferred that the messages were sent en masse given the alleged content of the messages targeting 'Ladies!' (not specific individuals) and advertising 'Blowout!' sales, fashion shows, and parties." *Strickler*, 2012 WL 5386089 at *2.

12960038:3

"Defendants' joint telemarketing scheme . . . is widespread."[42] Plaintiff makes no specific allegations regarding the language of the call other than to say she was offered a free cruise. As such, Plaintiff's TCPA claim should be dismissed for failure to plead that either Defendant used automatic dialing technology

### E. The TCPA's allowance for "actual damages" does not include damages for emotional distress, and thus, Plaintiff's allegations should be stricken.

Citing no authority, Plaintiff continues to assert her entitlement to "emotional damages" for her TCPA claim.[43] Wholly ignoring the authority cited in the motion to dismiss, Plaintiff asserts that "emotional damages" are considered "actual damages" under the TCPA and that "Plaintiff's [sic] properly claims these damages."[44] First, it is well-established that where emotional damages are not expected or contemplated, they are considered special damages, not actual damages.[45] The TCPA does not contemplate emotional damages, and one would not anticipate that mental anguish would result from receiving unsolicited telephone calls. Thus, the emotional damages would be considered special damages here. However, even assuming – *arguendo* – that Plaintiff was entitled to these sorts of damages, nowhere in the Amended Complaint does Plaintiff allege exactly how her "anger and frustration" resulted in actual damages, or even special damages.[46] As such, Plaintiff's claim for emotional damages should be stricken.

---

42. *DE 21 at ¶24.*
43. DE 24 at 18.
44. DE 24 at 18; *cf*. DE 22 at 15, n. 71.
45. "The phrase is an old one: Special, as contradistinguished from general damage, is that which is the natural, but not the necessary, consequence of the act complained of . . . Emotional distress is not an ordinary consequence of patent or copyright infringement, however, and would fall into the category of 'special damages' for those torts." *Neal v. Honeywell, Inc.*, 191 F.3d 827, 832 (7th Cir. 1999) (internal citations omitted).
46. *See* DE 21 at ¶27.

### III. CONCLUSION

For the foregoing reasons, the Amended Complaint must be dismissed and Plaintiff's demand for such damages should be stricken.

DATED: May 10, 2013

/s/Richard W. Epstein
Richard W. Epstein, (Fla. Bar No. 229091)
*(Admitted Pro Hac Vice)*
Jeffrey A. Backman, (Fla. Bar No. 662501)
*(Admitted Pro Hac Vice)*
GREENSPOON MARDER, P.A.
200 East Broward Blvd., Suite 1500
Fort Lauderdale, Florida 33301
954.491.1120 (Telephone)
954.343.6958 (Facsimile)
richard.epstein@gmlaw.com
jeffrey.backman@gmlaw.com

-and-

Joe T. Sanders, II
State Bar No. 24044930
SCOTT, DOUGLASS & McCONNICO, LLP
600 Congress Avenue, Suite 1500
Austin, Texas 78701-2589
Tel: (512) 495-6300
Fax: (512) 474-0731
Email: jsanders@scottdoug.com

*Attorneys for Defendants Caribbean
Cruise Line and The Berkley Group*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I filed the foregoing with the Clerk of Court using the Clerk's CM/ECF system, and forwarded a copy to the following on May 10, 2013 by regular U.S. Mail to Seregei Lemberg, Esq., Lemberg & Associates, L.L.C., 1100 Summer Street, 3d Floor, Stamford, CT 06905.

/s/Richard W. Epstein
Richard W. Epstein

12960038:3